# IN THE UNITED STATES DISTRICT COURT
# FOR THE NOTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| **SYNLAWN OF NORTHERN NEVADA LLC and AARON PENROD,**<br><br>Plaintiff,<br><br>vs.<br><br>**UTGH EQUIPMENT LLC, and SYNTHETIC TURF RESOURCES CORPORATION,**<br><br>Defendants. | Civil Action No. _____ |

## COMPLAINT AND JURY DEMAND

Plaintiffs Synlawn of Northern Nevada LLC, a Nevada Limited Liability Company ("SNN") and AARON PENROD ("A. PENROD") herein assert contract and tort claims against UTGH Equipment, LLC and its successor in interest, Synthetic Turf Resources Corporation (collectively "STR"), showing the Court as follows:

### INTRODUCTION

1.  In this commercial contract dispute, STR breached its distribution agreement with SNN and A. PENROD by, among other things, using threats and intimidation to force A. PENROD to give up his interest in SNN without following the express

provisions of the contracts herein alleged, by failing and refusing to honor and perform its contractual obligations to SNN, and by unilaterally terminating the Distribution Agreement with SNN (**Exhibit 1**) without cause.

## PARTIES

2. Plaintiff Synlawn of Northern Nevada LLC is, and at all times relevant to this lawsuit was, a limited liability company organized under the laws of the State of Nevada, with a principal place of business located at 3495 San Juan Dr., Reno, Nevada, 89509.

   a. SNN's current members are: Paula Penrod and Dallas Penrod.

   b. Paula Penrod and Dallas Penrod are both individuals and were and still are citizens of the state of Nevada.

3. Plaintiff A. PENROD is an individual and was and still is a citizen of the state of Nevada and prior to 2020, held a membership interest in SNN.

4. UTGH Equipment, LLC is, and at all times relevant to this lawsuit was, a limited liability company organized under the laws of the State of Georgia, with a principal place of business located at 2680 Abutment Road SE, Dalton, Georgia, 30721.

5. Synthetic Turf Resources Corporation is, and at all times relevant to this lawsuit was, a business incorporated under the law of the State of Georgia, with a

principal place of business located at 2680 Abutment Road SE, Dalton, Georgia, 30721.

6. SNN and A. PENROD are informed and believe and thereon allege that Synthetic Turf Resources Corporation is the successor in interest to UTGH Equipment LLC and contractually assumed any and all contractual obligations imposed under the various contracts herein alleged.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship.

   a. The amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs; and

   b. This matter involves a dispute between citizens of different states: Plaintiffs Synlawn of Northern Nevada LLC and A. PENROD are citizens of the State of Nevada; Defendants UTGH Equipment, LLC, and its successor in interest, Synthetic Turf Resources Corporation, are both citizens of the State of Georgia.

8. This Court has personal jurisdiction over the Defendants as the Defendants are residents of the State of Georgia, they conduct substantial business operations in the State of Georgia, and they share the same principal place of business in the State of Georgia.

9. Venue is proper in the Rome Division of the District Court for the Northern District of Georgia because the Defendants reside in the Rome Division, and the parties contractually agreed to this venue. See *Distribution Agreement*, ¶31(d) **Exhibit 1**.

## GENERAL ALLEGATIONS

10. STR is engaged in the business of manufacturing and marketing synthetic turf products ("Products") for use as synthetic lawns, synthetic putting greens, synthetic lawn play areas, and synthetic sports fields, including, without limitation, those Products marketed under the names "Synlawn" and "Putting Greens Direct". STR is also in the business of manufacturing purported "generics" and "white label turf for hire" for sale both directly to consumers as well as third-party companies which in turn sell the products to consumers marketed under different trade names ("Generic Products").

11. STR contracts with a network of wholesale distributors across the nation to distribute the Products within specified and limited geographic areas.

**The Distribution Agreement**

12. One such distributor was Richard Genest. STR provided exclusive distribution rights for Mr. Genest in geographic areas in both California and Nevada.

13. On or about January 21, 2015, Mr. Genest – with the written approval of STR – sold his distribution rights in certain geographic areas in Nevada to Plaintiff SNN.

14. As part of that purchase, SNN and STR entered into a written agreement titled "Distribution Agreement." A true and correct copy of the Distribution Agreement is attached to this Complaint as **Exhibit 1**, and is incorporated by this reference into this Complaint as though fully set forth herein.

15. As part of the Distribution Agreement, STR agreed to confer on SNN "the exclusive right to purchase Products from Manufacturer for the purpose of reselling the Products solely within the Territory." **Exhibit 1**, ¶3. The "Territory" was defined as the following counties within the State of Nevada: Washoe County, Storey County, Carson County, Lyon County, and Douglas County.

16. STR was not allowed to terminate the Distribution Agreement without cause. **Exhibit 1**, ¶18(b). Rather, STR's termination rights were limited to five specific occurrences:

   a. SNN fails to make timely payment for Products;

   b. SNN is found guilty of fraud or breach of the Distribution Agreement by a Court of law;

   c. SNN voluntarily files for bankruptcy, dissolves as a legal entity, or makes an assignment for the benefit of its creditors;

   d. A receiver, liquidator, or trustee is appointed by a Court of law; SNN is adjudicated bankrupt or insolvent; material portions of SNN's

properties are attached or sequestered by a court; petition is filed against SNN for bankruptcy, reorganization, arrangement, insolvency, etc.

e. SNN breaches any terms or conditions of the Distribution Agreement, provided that STR gives SNN written notice of the claimed breach and thirty (30) days to cure the breach.

17. None of the terminable occurrences listed in **Exhibit 1**, Section 18(b) occurred.

**The Supply Agreement**

18. On or about April 2, 2015, after substantial negotiations with STR, SNN expanded its distribution Territory through a separate and distinct "Supply Agreement" to include the following rural counties in Nevada: Mineral County, Churchill County, Pershing County, Humboldt County, Lander County, Eureka County, Elko County, and White Pine County (collectively "Rural Territory"). A true and accurate copy of the Supply Agreement is attached as **Exhibit 2,** and is incorporated by this reference into this Complaint as though fully set forth herein.

19. The Supply Agreement did not terminate, modify, or otherwise amend the Distribution Agreement. Rather, the Supply Agreement merely provided the terms upon which distribution would occur in the Rural Territory.

20. Unlike the Distribution Agreement, STR was able to terminate the Supply Agreement "without cause" on sixty days advanced written notice.

**Breach of the Distribution Agreement**

21. On or about December 3rd, 2019, A. PENROD, posted on his personal Facebook page a post that STR found to be objectionable. The subject post was thereafter immediately removed by A. PENROD. Nevertheless, STR insisted that A. PENROD immediately give up his interest in SNN without delay or STR threatened to terminate its relationship with SNN immediately. None of the provisions of the Distribution Agreement relating to termination were followed in connection with the demand. Risking losing its ability to continue its business operations and supply of turf, A. PENROD and SNN acquiesced to STR's threats, and A. PENROD immediately gave up his interest in SNN under duress.

22. Despite SNN and A. PENROD complying with STR's unjustified and unwarranted threats to terminate the Distribution Agreement, on January 4, 2022, STR sent a letter to SNN titled "Termination of SYNLawn of Northern Nevada, LLC Supply Agreement" (hereinafter "Termination Letter") which threatened to terminate the distribution relationship between STR and SNN on April 2, 2022. A true and accurate copy of the Termination Letter is attached as **Exhibit 3,** and is incorporated by this reference into this Complaint as though fully set forth herein.

23. STR made good on its threat in the Termination Letter: on April 2, 2022 STR terminated, without cause, its distribution relationship with SNN, refused to sell any

additional Products to SNN as required by the Distribution Agreement, and began to directly compete against SNN in the Territory.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

24. SNN incorporates, by this reference, the allegations in paragraphs 1-23, as though fully set forth herein.

25. The Distribution Agreement (**Exhibit 1**) is a valid, enforceable contract.

26. STR is a party to the Distribution Agreement and has breached, and otherwise failed to perform its obligations under, the terms of the Distribution Agreement.

27. STR's breaches and performance failures include, but are not necessarily limited to, the following:

   a. Forcing A. PENROD to give up his interest in SNN under threats and intimidation without justification or excuse;

   b. Failure to sell Products pursuant to the terms of the Distribution Agreement after April 2, 2022;

   c. Revoking of license to use trademarks and other marketing material;

   d. STR has consistently failed to provide adequate inventory. This failure has resulted in SNN's inability to fulfill its clients' orders.

   e. STR has dropped numerous products from its product line with absolutely no notice to SNN.

f. While STR is permitted to sell "Generics" under the Distribution Agreement, according to the Agreement, Generics are defined as "being among the lowest price point products in the synthetic turf industry." The implied distinguishing difference between name-brand products and "generic" is that the generics would be materially distinguishable from the name-brand products, be of lower quality, and not possess the unique characteristics of the name-brand products. However, STR has abused its right to sell Generics in a manner which is contrary to the express and implied provision of the Agreement, which has detrimentally damaged SNN.

g. STR has persistently lowered the quality of its name-brand products while at the same time improving the quality of its "generics" to the point that the two classifications of products are only distinguishable by the color of the backing. The products are virtually otherwise indistinguishable. As a result, SNN was left paying considerably more for the name-brand turf, while others are free to purchase the "generics" at will and at a much cheaper price point thereby undercutting SNN's market.

h. While the Distribution Agreement provides that SNN is permitted to purchase "generics," it is under limited and restrictive terms.

> Nonetheless, SNN was continually prevented from purchasing the generics without justification.
>
> i. Sending defective and damaged Products.
>
> j. Improper reimbursements, including reimbursements made under the Lowe's Program.

28. SNN is a party to the Distribution Agreement and has a right to complain about the contract being broken.

29. A. PENROD was a party to the Distribution Agreement by virtue of his membership interest in SNN at the time of the breaches herein alleged and has the right to complain about the contract being broken.

30. SNN and A. PENROD has been damaged, and continues to suffer damages, as a result of STR's breach of the Distribution Agreement.

31. SNN and A. PENROD's damages for this claim exceed $75,000.

## SECOND CLAIM FOR RELIEF
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

32. SNN and A. PENROD incorporate, by this reference, the allegations in paragraphs 1-3, as though fully set forth herein.

33. The Distribution Agreement (**Exhibit 1**) is a valid, enforceable contract.

34. As a parties to the Distribution Agreement, STR had a duty of good faith and fair dealing in executing its contractual duties.

35. STR acted arbitrarily and/or capriciously in executing its contractual duties under the Distribution Agreement.

36. STR's arbitrary and capricious actions include, but are not necessarily limited to, the breaches set forth in paragraph 27 above.

37. SNN and A. PENROD have been damaged, and continue to suffer damages, as a result of STR's breaches of its duty of good faith and fair dealing.

38. SNN and A. PENROD's damages for this claim exceed $75,000.

## THIRD CLAIM FOR RELIEF
## TERMPORARY AND PERMANENT INJUNCTIONS

39. SNN incorporates, by this reference, the allegations in paragraphs 1-38, as though fully set forth herein.

40. Plaintiffs have suffered irreparable injuries including, but not necessarily limited to, the loss of market share in the Territory by, among other things:

    a. STR directly selling the Products in SNN's Territory; and

    b. STR refusing to supply Products for SNN to sell and install.

41. The remedies at law are inadequate to fully compensate Plaintiffs for the law of market share, from which SNN will likely never recover.

42. The balance of hardships weighs in favor of issuing the Permanent Injunction.

43. A permanent injunction would serve the public interest.

## FOURTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

44. SNN incorporates, by this reference, the allegations in paragraphs 1-43, as though fully set forth herein.

45. Pursuant to 28 U.S.C. § 2201, the District Court may declare the rights and other legal relations of any interested party seeking such declaration.

46. The Distribution Agreement (**Exhibit 1**) is a valid, enforceable contract.

47. STR is a party to the Distribution Agreement and has breached, and otherwise failed to perform its obligations under, the terms of the Distribution Agreement.

48. STR's breaches and performance failures include, but are not necessarily limited to, the conduct described in paragraph 27 above.

49. SNN and A. PENROD are parties to the Distribution Agreement and are therefore "interested parties" for purposes of declaratory judgments under 28 U.S.C. § 2201.

50. SNN and A. PENROD seek a declaration that STR breached, and continues to breach, the Distribution Agreement based on the conduct described in paragraph 27 above.

## FIFTH CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH CONTRACT

51. SNN incorporates, by this reference, the allegations in paragraphs 1-50, as though fully set forth herein.

52. SNN contracts with various clients for the purchase and installation of Products.

53. STR acted improperly and/or wrongfully without privilege by, among other things, engaging in the breaches described in paragraph 27 above.

54. STR's conduct caused clients and potential clients of SNN to discontinue or fail to enter into anticipated business relationships with SNN.

55. SNN was damaged in an amount exceeding $75,000.00 based on clients and potential clients who discontinued or failed to enter into anticipated business relationships with SNN.

56. STR's tortious conduct was a direct and proximate cause of the damages suffered by SNN.

WHEREFORE, Plaintiffs respectfully prays that the Court:

(1) Take jurisdiction of this matter;

(2) Grant a trial by jury as to all matters property triable to a jury;

(3) Issue a permanent injunction prohibiting STR from directly competing with SNN in the Territory;

(4) Issue a judgment declaring that UTGH and STR have breached the Distribution Agreement;

(5) Award Plaintiff monetary damages;

(6) Award Plaintiff the costs of litigation including reasonable attorney fees;

(7)     Award any such other further relief this Court deems just, equitable and proper.

## PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE

Dated May 25, 2022.

*s/Christopher P. Brown*

_____
Christopher P. Brown, GA Bar #795154
Geiger Legal Group LLC
109 W. Morris St., Suite A-5
Dalton, GA 30720
T: 770.720.4600
F: 770.720.4646
E: cbrown@geiger-legal.com
***Attorney for Plaintiff***